UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANDREW TAYLOR THOMPSON,<br><br>Plaintiff,<br><br>vs.<br><br>PIONEER BANK & TRUST,<br><br>Defendant. | 5:24-CV-05067-RAL<br><br><br>OPINION AND ORDER DENYING MOTION TO DISMISS FOR LACK OF JURISDICTION |

Before this Court is a Motion to Dismiss for Lack of Jurisdiction filed by Defendant Pioneer Bank & Trust ("Pioneer"). Doc. 3. For the following reasons, the motion is denied.

I. **Facts and Procedural Background**

Plaintiff Andrew Taylor Thompson is a citizen of South Dakota. Doc. 1 at 1. Pioneer is a South Dakota bank. Id. In 2006, Thompson and Pioneer entered into the Pioneer Bank & Trust Registered Representative Employment Agreement ("Employment Agreement") under which Pioneer employed Thompson as a financial advisor. Docs. 1 at 2; 1-1. Thompson worked for Pioneer until August 2024 when Thompson alleges that he was compelled to resign. Doc. 1 at 3. Thompson informed Pioneer of his resignation by providing Pioneer with a Notice of Resignation of Employment and Termination of Employment Agreement ("Notice"). Doc. 1-3.

In the Notice, Thompson explained the circumstances that compelled him to terminate his employment with Pioneer. Thompson stated that Pioneer required him to serve as an advisor to 2,000 clients, which was unreasonable and unachievable. Id. at 1. He further stated that he had

1

warned Pioneer's CEO that Pioneer's failure to provide additional administrative support to his colleague would cause her to quit, but his warning went unheeded. Id. He also warned the CEO that should his colleague quit, the colleague's accounts would be transferred to him, and he would be unable to properly manage the increased work, which then occurred. Id. Thompson alleged that Pioneer also was directly competing with him by actively transferring investments away from Thompson to Pioneer's trust department. Id. Thompson alleges that Pioneer created intolerable working conditions and that his termination amounted to constructive discharge. Doc. 1 at 4.

Thompson informed Pioneer in the Notice that he was terminating the Employment Agreement under Section 2 of the Employment Agreement. Doc. 1-3 at 1. Section 2 states "[t]his Agreement may be terminated with or without cause at any time by either Party upon written notice of termination to the other, notwithstanding any other [Pioneer] employment policy." Doc. 1-1 at 2. Thompson alleges that the only obligation in the Employment Agreement that survives termination is the obligation outlined in Section 3(p) of the Employment Agreement. Doc. 1 at 3. Section 3(p) states "the [non-solicitation of customer] covenants contained in this Paragraph are the essence of this Agreement, and [] they survive this Agreement and apply whether either party terminates this Agreement with or without cause." Id. at 3; see also Doc. 1-1 at 3. Thompson alleges that the non-compete clause captured in Section 21 of the Employment Agreement does not contain survival language and as such, ceased with the termination of the Employment Agreement. Doc. 1 at 3.

During his employment with Pioneer, Thompson alleges that he and Pioneer entered into two other agreements relevant to this lawsuit. First, Thompson alleges that Pioneer and Thompson both signed the Pioneer Bank & Trust Salary Continuation Agreement ("SCA"). Doc. 1 at 2 (attaching unsigned copy of SCA). Thompson alleges that the SCA is an employee benefits plan

governed by the Employee's Retirement Income Security Act ("ERISA"), Doc. 1 at 5, and that the SCA "was meant to provide Thompson with various retirement, disability, and other employment benefits as an incentive to remain at Pioneer and continue to grow the business." Doc. 6 at 2. The "Claim and Review Procedures" of the SCA contemplate an employee seeking relief for an "adverse benefit determination" by bringing an action under § 1132(a) of ERISA. Doc. 1-2 at 8–9. Pioneer filed an affidavit of its Chief Executive Officer (Pioneer's CEO) stating that Thompson and Pioneer's CEO discussed the SCA, but never agreed to its terms. Doc. 4 at 1-2. Thompson has not provided this Court with a signed copy of the SCA. In a later affidavit, Thompson implies that the SCA may not have been signed but that he relied on it regardless:

> The SCA was meant to provide me with various retirement, disability, and other employment benefits as an incentive to remain at Pioneer and continue to grow the business. The benefit plan set forth in the SCA apparently morphed into the Long Term Retention Agreement as noted in [Pioneer CEO] Clarkson's affidavit, as well as an amendment to the Employee Agreement. . . . Pioneer, through Mr. Clarkson, agreed to provide me with retirement and other employee benefits beyond my annual compensation package as set forth in the writings submitted in this lawsuit.

Doc. 7 at 1.

Second, in 2018, the parties entered into the Long Term Retention Agreement ("LTRA"). Docs. 1 at 2; 4 at 1; 5-1. The Complaint did not attach the LTRA, but the affidavit of Pioneer's CEO attached as the LTRA a document titled Second Amendment to Pioneer Bank and Trust Registered Employment Agreement, signed and dated November 5, 2018. Doc. 5-1. The document attached to the Pioneer CEO's affidavit differs markedly from the SCA, though both address compensation of Thompson upon termination or retirement, with the SCA addressing many other matters and only the SCA referencing ERISA provisions. No other agreement in the record appears to incorporate terms of the SCA. Thompson claims that he continued with Pioneer "at least in part, because I relied on the employee benefits Pioneer promised to me," and worked

3

at Pioneer "with the understanding and in reliance upon the fact that the employee benefit plan [described] in the SCA and included in later drafts/documents governed my benefits related to my employment." Doc. 7 at 2. In a second affidavit, Pioneer's CEO responds that Thompson proposed the LTRA as an alternative to the SCA, that no other Pioneer employee was party to the LTRA, and that the LTRA lacks any hallmarks of an ERISA-governed plan. Doc. 13. In short, Pioneer alleges the LTRA was agreed upon in lieu of the SCA. Doc. 12 at 2. Thompson's ERISA claim meanwhile is based on the terms of the SCA and not the LTRA. See Doc. 1.

After his employment ended, according to Thompson's complaint, his "expectation of deferred compensation, retirement/pension benefits, and other benefits set forth in the [SCA] were thwarted and undermined." Doc. 1 at 4. He further alleges that Pioneer materially breached the SCA and breached its duty of good faith and fair dealing. Id.

After leaving Pioneer, Thompson began working as a financial advisor through Raymond James. Id. Thompson asserts that he intends to continue to work as a financial advisor and that the non-compete clause in his Employment Agreement ended. Id. He further states that he informed Pioneer that he will abide by the non-solicitation clause in the Employment Agreement if Pioneer accepts that the non-compete clause was terminated. Id. at 5. However, Thompson now seeks a declaration that he need not abide by the non-solicitation clause because it does not comply with South Dakota law. Id.

Thompson's Complaint contains three counts: 1) an ERISA claim for recovery of benefits under and interference with his rights under the SCA; 2) declaratory judgment seeking various declarations relating to the Employment Agreement and Thompson's resignation; and 3) breach of the Employment Agreement. Doc. 1 at 5-8. Pioneer has moved to dismiss the Complaint for lack of jurisdiction. Doc. 4

4

## II.  Legal Standard

A challenge to subject matter jurisdiction under Rule 12(b)(1) can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). As such, courts must accept a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Communs., LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).

In contrast, where a factual attack is made on the court's subject matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In deciding a factual challenge to subject

matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730.

Here, Pioneer argues that this Court lacks subject matter jurisdiction because Thompson and Pioneer never entered into the SCA, which Thompson alleges is the ERISA-governed plan. Doc. 4 at 3. Pioneer argues the absence of the SCA means no ERISA plan nor in turn federal question jurisdiction exists. Doc. 4. This is a factual challenge to this Court's subject matter jurisdiction, so this Court may consider matters outside of the pleadings. See Eagle v. United States, 692 F. Supp. 3d 864, 872 (D.S.D. 2023). Accordingly, this Court included in the Facts and Procedural Background section material from the affidavits of Thompson and Pioneer's CEO.

### III. Discussion

"[F]ederal courts are courts of limited jurisdiction." United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010). This Court "has a special obligation to consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). When a court lacks jurisdiction, the case must be dismissed. See Robins v. Ritchie, 631 F.3d 919, 924 (8th Cir. 2011). Generally, federal courts have jurisdiction over an action under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), or 1367 (supplemental). The Complaint here invoked federal question jurisdiction and supplemental jurisdiction.

Under § 1331, federal district courts have jurisdiction over cases arising out of federal law, including federal statutes and the United States Constitution. Merely identifying a federal issue is not enough to confer federal jurisdiction; the right being enforced must arise from federal law. Cagle v. NHC Healthcare-Maryland Heights, LLC, 78 F.4th 1061, 1066 (8th Cir. 2023). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is

presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). However, dismissal for lack of subject matter jurisdiction may still be proper "when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998). The plaintiff has the burden "to establish subject-matter jurisdiction by a preponderance of the evidence." Richardson v. BNSF Railway Co., 2 F.4th 1063, 1067 (8th Cir. 2021).

In Count 1 of the Complaint, Thompson makes various claims under ERISA. Doc. 1 at 6. ERISA is a federal law that "comprehensively regulates certain employee welfare benefits and pension plans." Bannister v. Sorenson, 103 F.3d 632, 635 (8th Cir. 1996). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "ERISA, therefore, preempts state common law causes of action that reference or pertain to an ERISA plan." Eide v. Grey Fox. Tech. Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003). In addition to preempting state causes of action, ERISA creates a federal cause of action, authorizing "a participant or beneficiary [to] sue in federal court to recover benefits due under an employee benefit plan." Dakota, Minn. & E. R.R. Corp. v. Schieffer, 648 F.3d 935, 936–37 (8th Cir. 2011) (citing 29 U.S.C. § 1132(a)(1)(B)). ERISA also authorizes "a participant, beneficiary, or fiduciary . . . to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

In Count 1, Thompson seeks to "recover benefits due to him under [the SCA], to enforce his rights under the [SCA], and to clarify his rights to future benefits under the [SCA]" using the federal cause of action established by § 1132(a)(1)(B). Doc. 1 at 5. Thompson also alleges Pioneer interfered with his rights under the SCA in violation of 29 U.S.C. § 1140. Id. at 6. Thus, a federal

question is presented on the face of Thompson's Complaint, suggesting that this Court has federal question jurisdiction. However, Pioneer argues otherwise. Pioneer asserts that, specific to ERISA-related claims, Thompson must also prove that the SCA is an ERISA plan for this Court to exercise jurisdiction.

Before 2020, district courts within the Eighth Circuit treated the existence or non-existence of an ERISA plan as a jurisdictional question and required plaintiffs to prove by a preponderance of the evidence the existence of an ERISA plan before exercising jurisdiction over ERISA-based claims. See Dakota, Minn. & E. R.R. Corp. v. Schieffer, 744 F. Supp. 2d 987, 991 (D.S.D. 2010); In re Express Scripts, Inc. PBM Litig., No. 4:05-MD-01672, 2007 WL 4333380, at *8 (E.D. Mo. Dec. 7, 2007); EFCO Corp. v. Iowa Ass'n of Bus. and Indus., 447 F. Supp. 2d 985, 998 (S.D. Iowa 2006). District courts relied on binding Eighth Circuit precedent, namely Kulinski v. Medtronic Bio-Medicus, Inc., which held "[w]here federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." 21 F.3d 254, 256 (8th Cir. 1995). Accordingly, district courts on motions to dismiss closely scrutinized the plans at issue in each case to determine whether they qualified as ERISA-plans. When courts found that the challenged plans were not ERISA plans, the underlying actions were dismissed for lack of jurisdiction. See Dakota, Minn. & E. R.R. Corp., 744 F. Supp. 2d at 997. However, in 2020, the Eighth Circuit revisited the issue of whether the existence of an ERISA plan was jurisdictional in light of Arbaugh v. Y&H Corp., 546 U.S. 500 (2006). See Sanzone v. Mercy Health, 954 F.3d 1031 (8th Cir. 2020).

In Arbaugh, the Supreme Court confronted the question of "whether Title VII's employee-numerosity requirement, 42 U.S.C. § 2000e(b), is jurisdictional or simply an element of a plaintiff's claim for relief." 546 U.S. at 509. In holding that the employee-numerosity requirement

8

was not jurisdictional, the Court provided guidance to lower courts for distinguishing between "two sometimes confused or conflated concepts:" subject matter jurisdiction and the "ingredients of a federal claim for relief." Id. at 503. The Court wrote "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." Id. at 515–16. However, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Id. at 516.

In Sanzone, the Eighth Circuit applied Arbaugh's guidance to ERISA claims and concluded "whether a plan is an ERISA plan is an element of the plaintiff's case and not a jurisdictional inquiry." 954 F.3d at 1040. The Eighth Circuit noted that "ERISA does not expressly make coverage jurisdictional." Id. at 1038. The court also distinguished, in a cursory manner, two of its post-Arbaugh cases—Chronister v. Baptist Health, 442 F.3d 648, 654 (8th Cir. 2006) and Dakota, Minn. & E. R.R. v. Schieffer, 711 F.3d 878, 880 (8th Cir. 2013)—where the Eighth Circuit discussed ERISA coverage as jurisdictional. The Eighth Circuit found that the jurisdiction discussions in those cases were dicta and unnecessary to the decisions. Id. at 1039.

Pioneer attempts to qualify Sanzone's holding, suggesting there remains an issue of jurisdiction where an employment agreement "was not an ERISA plan or related to an ERISA plan in such a way as to make the benefits due under ERISA." Doc. 12 at 5 (quoting Sanzone, 954 F.3d at 1039). In doing so, Pioneer relies on Dakota, Minn. & E. R.R. v. Schieffer, 711 F.3d 878 (8th Cir. 2013). However, that case preceded Sanzone and in Sanzone, the Eighth Circuit explicitly stated that its decision in Dakota, Minnesota & E. R.R. did not turn on the status of the plan at issue and "failed to directly address whether plan status was a jurisdictional inquiry." Sanzone, 954 F.3d at 1039.

9

Pioneer also attempts to reframe the jurisdictional issue as an issue of standing. Specifically, Pioneer argues Thompson lacks standing to sue under § 1132(a)(1)(B) because he is not a "participant" in an ERISA plan. Doc. 12 at 9–10. But this is a distinction without a difference. Section 1132(a)(1)(B) gives "a participant or beneficiary" a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1002(7) of Title 29 defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . , or whose beneficiaries may be eligible to receive any such benefit." To determine whether Thompson was a "participant" in an ERISA plan would require this Court to decide whether the SCA was an ERISA plan binding on the parties. And as the Eighth Circuit held in Sanzone, "whether a plan is an ERISA plan is an element of the plaintiff's case." 954 F.3d at 1040. Moreover, ERISA's definition of "participant" in § 1002(7) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." Arbaugh, 546 U.S. at 515. Rather, § 1002(7) "serves to identify those plaintiffs who may be entitled to relief, not to limit the authority of federal courts to adjudicate claims under ERISA." Leeson v. Transamerica Dis. Income Plan, 671 F.3d 969, 978 (9th Cir. 2012).

Thus, Thompson need not prove by a preponderance of the evidence that the SCA was an ERISA plan binding on the parties for this Court to exercise jurisdiction over his ERISA claim in Count 1. "Because the existence of an ERISA plan is not a jurisdictional prerequisite, federal subject-matter jurisdiction lies over [Thompson's] suit as long as [he] raise[s] a colorable claim under ERISA." Daft v. Advest, 658 F.3d 583, 593 (6th Cir. 2011).

Whether Thompson has raised a colorable claim under ERISA is a difficult call on this record. Usually when determining if there is a colorable claim, a court focuses on the well-pleaded allegations of the complaint. See Caterpillar, Inc, 482 U.S. at 392. Thompson's Complaint alleges that he and Pioneer signed the SCA, attaches an unsigned copy of the SCA which in turn references ERISA governed benefits and rights, and pleads in Count 1 an ERISA claim. Doc. 1; Doc. 1-2. Judging from the Complaint alone, Thompson has plead a colorable ERISA claim. Thompson's claim is also not "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co., 523 U.S. at 89. Because a federal question is presented on the face of Thompson's Complaint, this Court has federal question jurisdiction under 28 U.S.C. § 1331.[1]

The affidavits however suggest that the SCA was never signed and that Thompson himself may have been the one to suggest the LTRA (which would appear not to be ERISA-governed in itself) in lieu of the SCA. Thompson counters that there is no requirement for an ERISA-governed plan to be signed. See 29 U.S.C. § 1102(a)(1) (requiring only a "written instrument"); Brines v. Extra Corp., 304 F.3d 699, 701–02 (7th Cir. 2002); Ross v. Rail Car Am. Grp. Disability Income Plan, 285 F.3d 735, 742 (8th Cir. 2002). Thompson also contends that promissory estoppel— based on his affidavit's contention that he relied on the draft SCA in entering into the LTRA and

---

[1] The Eighth Circuit in Sanzone, after determining that whether an ERISA plan exists is an element of a claim and not jurisdictional, still dismissed the ERISA claim because the plaintiff had failed to adequately plead that the plan was governed by ERISA. The Eighth Circuit's reasoning in Sanzone focused on the plan being a "church plan" exempt from ERISA under 29 U.S.C. § 1003(b)(2). 954 F.3d at 1040–45. Here the SCA plainly is not a church plan, and Thompson has plead both an ERISA claim and that the SCA is an ERISA governed plan. Doc. 1 at 5–6. Unlike in Sanzone, Pioneer has not argued that Thompson failed to state a claim. And unlike in Sanzone, where no apparent dispute over the plan document or the character of its religiously-affiliated sponsor existed, here the Complaint and affidavits reflect enough of a disagreement over the role of the SCA in Thompson's continued employment to surmount a motion to dismiss.

remaining employed—can support an ERISA claim. Doc. 6 at 15–16; see Algren v. Pirelli Armstrong Tire Corp., 197 F.3d 915, 916–17 (8th Cir. 1999). On this record, Pioneer's assertion that Thompson and Pioneer never agreed to the SCA and thus Thompson has no viable claim under ERISA is better addressed in a motion for summary judgment than one to dismiss.

This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Thompson's remaining claims in Counts 2 and 3 so long as the ERISA claim remains. Section 1367 states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Thompson's remaining claims for declaratory relief and breach of employment agreement involve the same parties, underlying facts, and employment relationship relevant to Thompson's ERISA claim. Doc. 1 at 6–8.

### IV.    Conclusion

For the foregoing reasons, it is

ORDERED that Pioneer's Motion to Dismiss for Lack of Jurisdiction, Doc. 3, is denied.

DATED this 21st day of March, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE