UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANDREW TAYLOR THOMPSON, | 5:24-CV-05067-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER DENYING AS MOOT MOTION FOR LEAVE TO CONDUCT RULE 56(d) DISCOVERY AND DEFERRING RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT |
| PIONEER BANK & TRUST, | |
| Defendant. | |

Before this Court is a Motion for Leave to Conduct Rule 56(d) Discovery filed by Defendant Pioneer Bank & Trust ("Pioneer"). Doc. 22. For the following reasons, the motion is denied, but this Court defers ruling on the current pending motion for summary judgment.

I.    **Facts and Procedural Background**

Plaintiff Andrew Taylor Thompson is a citizen of South Dakota. Doc. 1 at 1. Pioneer is a South Dakota bank. Id. In 2006, Thompson and Pioneer entered into the Pioneer Bank & Trust Registered Representative Employment Agreement ("Employment Agreement") under which Pioneer employed Thompson as a financial advisor. Docs. 1 at 2; 1-1. Thompson worked for Pioneer until August 2024 when Thompson alleges that he was compelled to resign. Doc. 1 at 3. Thompson informed Pioneer of his resignation by providing Pioneer with a Notice of Resignation of Employment and Termination of Employment Agreement ("Notice"). Doc. 1-3.

Thompson informed Pioneer in the Notice that he was terminating the Employment Agreement under Section 2 of the Employment Agreement. Doc. 1-3 at 1. Section 2 states "[t]his

1

Agreement may be terminated with or without cause at any time by either Party upon written notice of termination to the other, notwithstanding any other [Pioneer] employment policy." Doc. 1-1 at 2. Thompson alleges that the only obligation in the Employment Agreement that survives termination is the obligation outlined in Section 3(p) of the Employment Agreement. Doc. 1 at 3. Section 3(p) states "the [non-solicitation of customer] covenants contained in this Paragraph are the essence of this Agreement, and [] they shall survive this Agreement and apply whether either party terminates this Agreement with or without cause." Id. at 3; see also Doc. 1-1 at 3. Thompson alleges that the non-compete clause captured in Section 21 of the Employment Agreement does not contain survival language and as such, ceased with the termination of the Employment Agreement. Doc. 1 at 3.

During his employment with Pioneer, Thompson alleges that he and Pioneer entered into two other agreements relevant to this lawsuit. First, Thompson's complaint alleges that Pioneer and Thompson both signed the Pioneer Bank & Trust Salary Continuation Agreement ("SCA"). Doc. 1 at 2 (attaching unsigned copy of SCA). Thompson claims that the SCA is an employee benefits plan governed by the Employee's Retirement Income Security Act ("ERISA"), Doc. 1 at 5, and that the SCA "was meant to provide Thompson with various retirement, disability, and other employment benefits as an incentive to remain at Pioneer and continue to grow the business." Doc. 6 at 2. The "Claim and Review Procedures" of the SCA contemplate an employee seeking relief for an "adverse benefit determination" by bringing an action under § 1132(a) of ERISA. Doc. 1-2 at 8–9. Pioneer in connection with a prior motion to dismiss filed an affidavit of its Chief Executive Officer (Pioneer's CEO) stating that Thompson and Pioneer's CEO discussed the SCA, but never agreed to its terms. Doc. 4 at 1-2. Thompson has not provided this

Court with a signed copy of the SCA. In a later affidavit, Thompson implies that the SCA may not have been signed but that he relied on it regardless:

> The SCA was meant to provide me with various retirement, disability, and other employment benefits as an incentive to remain at Pioneer and continue to grow the business. The benefit plan set forth in the SCA apparently morphed into the Long Term Retention Agreement as noted in [Pioneer CEO] Clarkson's affidavit, as well as an amendment to the Employee Agreement. . . . Pioneer, through Mr. Clarkson, agreed to provide me with retirement and other employee benefits beyond my annual compensation package as set forth in the writings submitted in this lawsuit.

Doc. 7 at 1.

Second, in 2018, the parties entered into the Long Term Retention Agreement ("LTRA"). Docs. 1 at 2; 4 at 1; 5-1. The Complaint did not attach the LTRA, but the affidavit of Pioneer's CEO attached as the LTRA a document titled Second Amendment to Pioneer Bank and Trust Registered Employment Agreement, signed and dated November 5, 2018. Doc. 5-1. The document attached to the Pioneer CEO's affidavit differs markedly from the SCA, though both address compensation of Thompson upon termination or retirement, with the SCA addressing many other matters and only the SCA referencing ERISA provisions. No other agreement in the record appears to incorporate terms of the SCA. Thompson claims that he continued with Pioneer "at least in part, because I relied on the employee benefits Pioneer promised to me," and worked at Pioneer "with the understanding and in reliance upon the fact that the employee benefit plan [described] in the SCA and included in later drafts/documents governed my benefits related to my employment." Doc. 7 at 2. In a second affidavit, Pioneer's CEO responds that Thompson proposed the LTRA as an alternative to the SCA, that no other Pioneer employee was party to the LTRA, and that the LTRA lacks any hallmarks of an ERISA-governed plan. Doc. 13. In short, Pioneer asserts that the LTRA was agreed upon in lieu of the SCA. Doc. 12 at 2. Thompson's ERISA claim meanwhile is based on the terms of the SCA and not the LTRA. See Doc. 1.

After his employment ended, according to Thompson's complaint, his "expectation of deferred compensation, retirement/pension benefits, and other benefits set forth in the [SCA] were thwarted and undermined." Doc. 1 at 4. He further alleges that Pioneer materially breached the SCA and its duty of good faith and fair dealing. Id.

After leaving Pioneer, Thompson began working as a financial advisor through Raymond James. Id. Thompson intends to continue to work as a financial advisor, believing that the non-compete clause in his Employment Agreement ended. Id. He further states that he informed Pioneer that he will abide by the non-solicitation clause in the Employment Agreement if Pioneer accepts that the non-compete clause was terminated. Id. at 5. However, Thompson seeks a declaration that he need not abide by the non-solicitation clause because it does not comply with South Dakota law. Id.

Thompson's Complaint contains three counts: 1) an ERISA claim for recovery of benefits under and interference with his rights under the SCA; 2) declaratory judgment seeking various declarations relating to the Employment Agreement and Thompson's resignation; and 3) breach of the Employment Agreement. Doc. 1 at 5–8. Thompson alleges this Court has jurisdiction under 28 U.S.C. § 1331 over Count 1 and supplemental jurisdiction under 28 U.S.C. § 1367 over Counts 2 and 3. Pioneer moved to dismiss the Complaint for lack of jurisdiction, arguing that this Court lacked subject matter jurisdiction because Thompson and Pioneer never entered into the SCA, which Thompson alleges is the ERISA-governed plan. Doc. 4 at 3. Pioneer asserted that the absence of the SCA means no ERISA plan nor in turn federal question jurisdiction.[1] Id.

---

[1] Pioneer also filed an action in Pennington County, Seventh Judicial Circuit, styled Pioneer Bank & Trust v. Thompson, 51 CIV 24-001245, evidently after Thompson started his federal suit. The state court action is stayed pending this case. Doc. 24-1.

4

Relying on Sanzone v. Mercy Health, 954 F.3d 1031 (8th Cir. 2020), this Court denied the motion to dismiss. Doc. 14. In Sanzone, the United States Court of Appeals for the Eighth Circuit concluded "whether a plan is an ERISA plan is an element of the plaintiff's case and not a jurisdictional inquiry." 954 F.3d at 1040. Accordingly, this Court noted that "[b]ecause the existence of an ERISA plan is not a jurisdictional prerequisite, federal subject-matter jurisdiction lies over [Thompson's] suit as long as [he] raise[s] a colorable claim under ERISA." Doc. 14 at 10. This Court concluded that Thompson raised a colorable ERISA-governed claim based on his allegations of entering into the SCA.

Pioneer subsequently filed an Answer to the Complaint, denying the allegations and again asserting that this Court lacked jurisdiction. Doc. 15. This Court then issued an Order for Discovery report on April 4, 2025. Doc. 16. The parties held an initial Rule 26(f) conference on April 15 and filed the discovery report on May 5. Doc. 17. This Court issued a Scheduling Order, setting a discovery deadline for December 17, 2025, and dispositive motion deadline for January 31, 2026. Doc. 18.

On May 16, 2025, Thompson moved for partial summary judgment on Count 2 of the Complaint, which seeks a declaration that "(1) Thompson's termination of the Employment Agreement was valid; (2) Thompson's termination of the Employment Agreement also terminated the non-compete clause; and (3) that the non-solicitation clause is unenforceable." Doc. 21 at 2. Pioneer opposes partial summary judgment and requests leave to conduct discovery under Rule 56(d) "to determine whether this is the proper jurisdiction and to adequately respond to Plaintiff's Motion for Partial Summary Judgment." Doc. 23 at 4. In support of the motion for leave to conduct discovery, Pioneer's attorney filed an affidavit ("Affidavit") setting forth the information Pioneer believes it needs to properly respond to Thompson's motion for partial summary

judgment. Doc. 24. Thompson opposes Pioneer's motion for leave to conduct discovery, asserting that "the discovery sought by Pioneer is irrelevant and immaterial to opposing Thompson's Motion, and Pioneer has otherwise failed to satisfy its burden of obtaining a discovery continuance under settled Eighth Circuit law." Doc. 26 at 1.

## II.    Discussion

Thompson pleaded an ERISA claim to trigger federal question jurisdiction based on the SCA and then invokes supplemental jurisdiction for the claim on which he now seeks partial summary judgment. There is no diversity-of-citizenship jurisdiction here. Thompson's ERISA claim triggered federal jurisdiction under Sanzone but hangs by a bit of a jurisdictional thread. As this Court explained in its Opinion and Order denying Pioneer's motion to dismiss for lack of jurisdiction, under controlling authority and whether it makes sense or not, whether the SCA was in fact entered into and is ERISA-governed does not dictate this Court's jurisdiction. Doc. 14 at 9. Rather, whether the SCA constitutes an ERISA plan is an element of Thompson's ERISA claim. See Sanzone, 954 F.3d at 1040. To implicate federal jurisdiction, Thompson needed only to raise a colorable claim under ERISA, which he did. As such, whether the SCA exists as an ERISA plan is "better addressed in a motion for summary judgment than one to dismiss" for lack of jurisdiction. Doc. 14 at 12.

Pioneer states that it "must be permitted to inquire of Thompson via discovery whether he has any conceivable claim under ERISA, allowing jurisdiction of this Court." Doc. 23 at 8. Accordingly, much of the information Pioneer seeks as set forth in the Affidavit relates to the SCA, how the SCA may have morphed into the LTRA, and details of Thompson's deferred compensation and benefits plan. Doc. 24. Pioneer believes that such additional discovery will "establish whether Thompson has a viable ERISA claim, his only basis for this Court's

jurisdiction." Doc. 23 at 9. Indeed, material submitted in connection with the prior motion to dismiss suggests not only that the SCA was never signed, but also that Thompson himself may have suggested the LTRA (an agreement not ERISA-governed) in lieu of the SCA.

Shrewdly, Thompson moves for partial summary judgment on questions of law on one of his state-law claims, seeking a ruling before Pioneer can conduct discovery to make its own motion for summary judgment on the ERISA claim. Pioneer believes, though no motion to compel has been filed, that Thompson dodged his responsibility to make good faith Rule 26(a)(1) Initial Disclosures. Docs. 24-4, 24-5. Of course, a federal court "has a special obligation to consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). And only in certain circumstances will a federal court exercise supplemental jurisdiction if the claim triggering federal jurisdiction is dismissed. See Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009) ("It is within the district court's discretion to exercise supplemental jurisdiction after dismissal of the federal claim." (citation omitted)); Starkey v. Amber Enters., Inc., 987 F.3d 758, 765 (8th Cir. 2021) (holding that when a federal claim is dismissed, "the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims" (citation omitted)). For now, this Court is only ruling on Pioneer's motion for leave to conduct discovery.

Summary judgment is proper "only after the nonmovant has had adequate time for discovery." Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P., 687 F.3d 1045, 1049 (8th Cir. 2012) (cleaned up and citation omitted). Federal Rule of Civil Procedure 56(d) allows a court to "defer considering a summary judgment motion or allow time for discovery '[i]f a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts

7

essential to justify its opposition.'" Anzaldua v. Ne. Ambulance & Fire Prot. Dist., 793 F.3d 822, 836 (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(d)). A party requesting discovery under Rule 56(d) must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." Marlow v. City of Clarendon, 78 F.4th 410, 416 (8th Cir. 2023). The affidavit must "state with specificity what evidence further discovery would uncover." Anzaldua, 793 F.3d at 837. "[U]nspecific assertion[s] [are] insufficient." Id. "If a party fails to carry its burden, postponement of a ruling on a motion for summary judgment is unjustified." Marlow, 78 F.4th at 416 (cleaned up and citation omitted).

"Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995) (citation omitted). In South Dakota, contract interpretation is a question of law. See Yarcheski v. Reiner, 669 N.W.2d 487, 495 (S.D. 2003). "Generally, the meaning of an unambiguous contract presents a question of law appropriate for summary judgment while the interpretation of an ambiguous contract presents a question of fact, thereby precluding summary judgment." ESCO MFG v. Advance Sign Grp., LLC, No. CIV 07–1026, 2008 WL 4975833, at *6 (D.S.D. Nov. 20, 2008) (cleaned up and citation omitted). When the contents of the contract are undisputed and there is no ambiguity, the intent of the parties is to be derived only "from the four corners of the contract." Black Hills Excavating Servs., Inc., v. Retail Constr. Servs., Inc., 877 N.W. 2d 318, 322 (S.D. 2016) (citation omitted). Indeed, absent an ambiguity in contract language, extrinsic evidence is barred, see City of Watertown v. Dakota, Minn. & E. R.R. Co., 551 N.W.2d 571, 576 (S.D. 1996), so allowing additional time to conduct discovery would be futile, see United States

v. Light, 766 F.2d 394, 398 (8th Cir. 1985) (per curiam) (affirming denial of additional discovery where parol evidence rule would have barred admission of the additional discovery).

Even where a contract is ambiguous, that initial determination of ambiguity is a question of law for this Court. See Ziegler Furniture and Funeral Home, Inc. v. Cicmanec, 709 N.W.2d 350, 354 (S.D. 2006). As such, extrinsic evidence may not be considered to "create an ambiguity." Dakota Energy Coop., Inc. v. East River Elec. Power Coop., Inc., 4:20-CV-4192, 2022 WL 1775687, at *3 (D.S.D. Apr. 11, 2022). "When there is an ambiguous contract, evidence must be introduced to determine what the intentions of the parties were and . . . such evidence creates a question of fact, which must be resolved by the jury." Vollmer v. Akerson, 688 N.W.2d 225, 229 (S.D. 2004) (citation omitted). Accordingly, in the event of ambiguity, the appropriate action is to deny summary judgment. See Atmosphere Hosp. Mgmt., LLC v. Shiba Invs., Inc., 158 F. Supp. 3d 837, 865 (D.S.D. 2016) (denying summary judgment on breach of contract claim after finding the contract ambiguous).

Additional discovery under Rule 56(d) is typically unnecessary when a motion for summary judgment presents a purely legal question like contract interpretation. See GEICO Cas. Co. v. Isaacson, 932 F.3d 721, 726–27 (8th Cir. 2019) (finding district court did not abuse discretion in denying additional discovery under Rule 56(d) because Missouri law prohibits introduction of extrinsic evidence to interpret unambiguous contract); Broadway Ford Truck Sales, Inc. v. Depositors Ins. Co., No. 4:20-CV-00999, 2021 WL 2075545, at *2 (E.D. Mo. May 24, 2021) (denying motion for discovery under Rule 56(d) where issue was matter of contract interpretation); Hillshire Brands Co. v. Travelers Cas. & Sur. Co., No. 15 C 06859, 2016 WL 6892885 at *2 (N.D. Ill. Nov. 23, 2016) ("[T]he Court should deny the Rule 56(d) motion only if the issues at stake are purely legal such that no facts could make a difference in the outcome of the

9

case."); Sabeerin v. Fassler, No. 1:16-cv-00497, 2021 WL 1227726, at *4 (D.N.M. Apr. 1, 2021) (denying motion for Rule 56(d) discovery on "purely legal question of whether officers had arguable probable cause" to conduct a search).

Thompson's motion for partial summary judgment seeks a declaration on three discrete issues on claims presently within the supplemental jurisdiction of this Court: that "(1) Thompson's termination of the Employment Agreement was valid; (2) Thompson's termination of the Employment Agreement also terminated the non-compete clause; and (3) that the non-solicitation clause is unenforceable." Doc. 21 at 2. Pioneer does not dispute the contents of the Employment Agreement. Doc. 15 ¶¶ 10, 16, 17. Resolution of the three issues turns largely on interpretation of the Employment Agreement, a purely legal matter. See Yarcheski, 669 N.W.2d at 495.

First, this Court need only interpret Section 2 of the Employment Agreement to decide whether Thompson's termination of the Employment Agreement was valid. Second, whether the termination of the Employment Agreement terminated the non-compete clause is also a matter of contract interpretation. Thompson relies on two opinions from the Eighth Circuit—Miller v. Honkamp Krueger Fin. Servs., Inc., 9 F.4th 1011 (8th Cir. 2021) and Wilbur-Ellis Co., LLC v. Erikson, 103 F.4th 1352 (8th Cir. 2024)—in support of his argument. In Miller, the Eighth Circuit interpreted a non-compete provision in an employment agreement as surviving only termination of employment and not surviving the termination of the employment agreement where the contract treated the term of employment and the term of the employment agreement as "two distinct concepts." 9 F.4th at 1015. In Wilbur-Ellis Co., the Eighth Circuit reversed this Court's grant of a preliminary injunction enforcing a non-compete provision in an employee agreement after termination of the agreement. 103 F.4th at 1356–57. The Eighth Circuit found that because the agreement lacked the express language required by the survival clause stating that the non-compete

survived termination of the agreement, the plaintiff was unlikely to prevail on the merits of its breach of contract claim relating to the non-compete provision. Id. The Eighth Circuit reached its conclusion after interpreting the language of the agreement. Thompson argues that the non-compete provision in his Employment Agreement, like the provisions at issue in Miller and Wilbur-Ellis Co., does not survive termination of the Employment Agreement. In deciding the issue, this Court must interpret the Employment Agreement, just as the Eighth Circuit did in Miller and Wilbur-Ellis Co. Finally, whether the non-solicitation clause violates South Dakota's law prohibiting restraint of trade[2] is also a question of contract interpretation. See Ward v. Midcom, Inc., 575 N.W.2d 233, 236 (S.D. 1998). Thus, Thompson's motion for partial summary judgment appears to present only legal questions for this Court to resolve. Accordingly, leave to conduct additional discovery under Rule 56(d) is unnecessary as to the limited issues Thompson chose to frame in his motion for partial summary judgment.

Thompson's motion for partial summary judgment does not concern the ERISA claim in Count 1. So Thompson savvily argues that any discovery that Pioneer seeks relating to Thompson's ERISA claim is not "essential to resist [Thompson's] summary judgment motion." Marlow, 78 F.4th at 416; see also Broadway Ford Truck Sales, Inc., 2021 WL 2075545, at *2 (finding discovery into party's intention for entering into a settlement agreement was unnecessary to rebut partial motion for summary judgment involving contract interpretation).

---

[2] SDCL § 53-9-8 provides that "[a]ny contract restraining exercise of a lawful profession, trade, or business is void to that extent, except as provided by §§ 53-9-9 to 53-9-12, inclusive." SDCL § 53-9-11 permits non-solicitation provisions so long as they are limited to a "specified area for any period not exceeding two years from the date of termination of the agreement." Thompson argues that the non-solicitation provision in the Employment Agreement is unenforceable because it fails to specifically describe a geographical scope and exceeds the scope of what's permissible under SDCL § 53-9-11.

In addition to discovery on the ERISA claim involving the SCA that perhaps was never agreed to by the parties, Pioneer seeks discovery to address the merits of Thompson's motion for partial summary judgment. To resist Thompson's contention that termination of the Employment Agreement also terminated the non-compete provision, Pioneer seeks discovery to "confirm that Thompson is not claiming there were relevant subsequent agreements relating to non-compete clauses." Doc. 23 at 11. In support of its request, Pioneer points to the fact that the plaintiff in Miller entered a subsequent "ancillary agreement" that did not contain a non-compete provision after entering into an employment agreement. However, the Eighth Circuit expressly declined to decide what impact, if any, the ancillary agreement had on the noncompete provision in the employment agreement. Miller, 9 F.4th at 1014. Rather, the Eighth Circuit endeavored to simply interpret the employment agreement. As in Miller, the possibility of any subsequent agreement that *could* exist here does not appear to impact interpretation of the Employment Agreement.

Pioneer seeks leave to conduct discovery to secure extrinsic evidence to aid this Court in interpreting the Employment Agreement should this Court find the Employment Agreement ambiguous. Doc. 23 at 12–13. Though admitting it would be "difficult to predict what extrinsic evidence may be secured," Doc. 23 at 12, Pioneer seeks to question Thompson regarding a separate agreement Thompson may have entered into with LPL Financial, Doc. 24 at 3. Pioneer intends to look into whether the agreement between LPL Financial and Thompson had a non-compete provision and what Thompson understood that provision to mean. Doc. 28 at 5. This Court has not yet decided whether the Employment Agreement is ambiguous, and it cannot consider extrinsic evidence in making that determination. See Dakota Energy Coop, Inc., 2022 WL 1775687, at *3. Pioneer suggests the Employee Agreement is ambiguous "[g]iven the different interpretations . . . between Thompson and Pioneer." Doc. 23 at 12. However, "[a] contract is not rendered

ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract." Dowling Fam. P'ship v. Midland Farms, 865 N.W.2d 854, 860 (S.D. 2015) (citation omitted).    Assuming this Court found the Employee Agreement ambiguous, Pioneer has already stated that its interpretation differs from Thompson. Doc. 23 at 12.  In that case, "the intention of the parties becomes a question of fact which must be resolved by the jury," and the appropriate action by this Court would be to deny summary judgment rather than grant Pioneer's request for leave to conduct additional discovery under Rule 56(d). Atmosphere Hosp. Mgmt., LLC, 158 F. Supp. 3d at 862.  Discovery about some different agreement with LPL Financial seems unconnected to the questions framed by the motion for partial summary judgment.

Pioneer also seeks discovery related to the circumstances of Thompson's new employment and Thompson's claim of constructive termination.  Pioneer argues that the information is relevant in light of Thompson's reliance on Wilbur-Ellis Co. in arguing that the non-compete provision terminated with the termination of the Employee Agreement.  Doc. 23 at 13.  However, the decision in Wilbur-Ellis Co. turned entirely on the language of the agreement at issue. Accordingly, Pioneer fails to show that "these sought-after facts are essential to resist the summary judgment motion," even though they are related to other claims Thompson raises in his complaint. Marlow, 78 F.4th at 416.

Regarding Thompson's contention that the non-solicitation provision in the Employment Agreement violates South Dakota law, Pioneer's brief in support of its Rule 56(d) motion complains of there being "no discovery with respect to Thompson's current business or the clients he serves." Doc. 23 at 14. Whether the non-solicitation provision fails to specifically describe a geographical scope or exceeds what's permissible under SDCL § 53-9-11 appears to be a question of law unimpacted by Thompson's current business or clients. Accordingly, Pioneer fails to "set

forth in affidavit form the specific facts that they hope to elicit from further discovery," and to show that "the facts sought exist, and . . . that these sought-after facts are essential to resist the summary judgment motion." Marlow, 78 F.4th at 416.

In sum, Pioneer has failed to meet its burden for obtaining leave for additional discovery under Rule 56(d) to resist Thompson's motion for partial summary judgment on the three matters contained in the motion. But this Court has not stayed discovery, and Pioneer remains free to conduct discovery from Thompson. From the briefing on the motion to dismiss, the viability of the ERISA claim based on a binding SCA is precarious, leaving the basis for federal jurisdiction in doubt. Indeed, this Court invited raising a challenge to the ERISA-governed claim through a summary judgment motion. This Court is reluctant to rule on the state-law claims early in discovery before Pioneer has an opportunity to do discovery on and potentially file a motion for summary judgment on the ERISA claim triggering jurisdiction.

## III.    Order

Therefore, it is

ORDERED that Pioneer's Motion to Conduct Rule 56(d) Discovery, Doc. 22, is denied both because the requisite showing under Rule 56(d) was not made and because it is largely moot in that this Court is going to withhold ruling on Thompson's Motion for Partial Summary Judgment until after Pioneer has an opportunity to depose Thompson, conduct discovery on the existence of the SCA, and, if justified, file a motion for summary judgment on Count 1. It is further

ORDERED that Pioneer has 21 days to file its opposition to the motion for partial summary judgment as required by D.S.D. Civ. LR 7.1 together with a response to Thompson's statement of material facts or statement of disputed facts as required by D.S.D. Civ. LR 56.1. It is finally

14

ORDERED that Thompson cooperate with Pioneer to properly answer discovery requests and make himself available for a deposition so that Pioneer can file, or choose not to file, for summary judgment on Count 1.

DATED this 24ᵗʰ day of July, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

15