UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANDREW TAYLOR THOMPSON,<br><br>Plaintiff,<br><br>vs.<br><br>PIONEER BANK & TRUST,<br><br>Defendant. | 5:24-CV-05067-RAL<br><br>OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

Before this Court are two motions: one Motion for Partial Summary Judgment by Plaintiff Andrew Taylor Thompson (Thompson), Doc. 19, and one Motion for Summary Judgment by Defendant Pioneer Bank & Trust (Pioneer), Doc. 33. This Court grants Pioneer's Motion for Summary Judgment, Doc. 33, and denies Thompson's Motion for Partial Summary Judgment, Doc. 19, because Thompson and Pioneer never executed the Salary Continuation Agreement (SCA) claimed to have been ERISA-governed and therefore federal subject-matter jurisdiction is lacking.

I.  **Background**

This Court has detailed the factual and procedural background of this case in previous Opinions and Orders and now summarizes the background relevant to the disposition of the parties' cross-motions for summary judgment. See Docs. 14, 32. Thompson is a citizen of South Dakota, and Pioneer is a South Dakota bank. Doc. 1 at 1. In 2006, Thompson and Pioneer entered into the Pioneer Bank & Trust Registered Representative Employment Agreement (Employment

Agreement) under which Pioneer employed Thompson as a financial advisor. Doc. 1 at 2; Doc. 1-1. Thompson worked for Pioneer until August 2024 when Thompson alleges that he was compelled to resign. Doc. 1 at 3. Thompson informed Pioneer of his resignation by providing Pioneer with a Notice of Resignation of Employment and Termination of Employment Agreement (Notice). Doc. 1-3.

Following Thompson's departure from Pioneer, Thompson sued Pioneer stating the following three counts: (1) an Employee's Retirement Income Security Act (ERISA) claim alleging that the SCA was an ERISA-governed employee benefits plan that Pioneer had breached and that Pioneer had interfered with Thompson's ERISA-governed rights in violation of Section 510 of ERISA; (2) declaratory judgment seeking various declarations relating to the Employment Agreement and Thompson's resignation; and (3) breach of the Employment Agreement. Doc. 1. Thompson attached three documents to his Complaint: the Employment Agreement, the SCA, and the Notice. Docs. 1-1, 1-2, 1-3. The SCA attached to the Complaint was unsigned. Doc. 1-2 at 13. Thompson alleges this Court has jurisdiction under 28 U.S.C. § 1331 over Count 1 and supplemental jurisdiction under 28 U.S.C. § 1367 over Counts 2 and 3. Doc. 1 at 2. There is no diversity-of-citizenship jurisdiction here. See id. at 1.

After Thompson filed his Complaint, Pioneer moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Doc. 3. Pioneer argued that this Court lacked subject-matter jurisdiction because Thompson and Pioneer never entered into the SCA, which Thompson alleges is the ERISA-governed plan, and Pioneer filed an affidavit of its Chief Executive Officer stating that Thompson and Pioneer's CEO discussed the SCA but never agreed to its terms. Doc. 4 at 3; Doc. 4 at 1–2. Pioneer argued that without an executed SCA, the action did not arise under ERISA and this Court was without subject-matter jurisdiction. Doc. 4.

Thompson filed an affidavit in response and implied that the SCA may not have been signed but that he relied on it regardless:

> The SCA was meant to provide me with various retirement, disability, and other employment benefits as an incentive to remain at Pioneer and continue to grow the business. The benefit plan set forth in the SCA apparently morphed into the Long Term Retention Agreement as noted in [Pioneer CEO] Clarkson's affidavit, as well as an amendment to the Employee Agreement. . . . Pioneer, through Mr. Clarkson, agreed to provide me with retirement and other employee benefits beyond my annual compensation package as set forth in the writings submitted in this lawsuit.

Doc. 7 at 1.

The filing of the motion to dismiss and related documents revealed that in 2018, the parties had entered into a Long Term Retention Agreement (LTRA). Docs. 1 at 2; 4 at 1; 5-1. The Complaint's exhibits do not include the LTRA, but the affidavit of Pioneer's CEO attached the LTRA, which was signed and dated November 5, 2018. Doc. 5-1. The LTRA differs markedly from the SCA, and only the SCA references ERISA provisions. Compare Doc. 5-1 with Doc. 1-2. No other agreement in the record appears to incorporate terms of the SCA. Thompson claimed that he continued with Pioneer "at least in part, because I relied on the employee benefits Pioneer promised to me," and worked at Pioneer "with the understanding and in reliance upon the fact that the employee benefit plan [described] in the SCA and included in later drafts/documents governed my benefits related to my employment." Doc. 7 at 2. In a second affidavit, Pioneer's CEO responded that Thompson proposed the LTRA as an alternative to the SCA, that no other Pioneer employee was party to the LTRA, and that the LTRA lacks any hallmarks of an ERISA-governed plan. Doc. 13. In short, Pioneer asserted that the LTRA was agreed upon in lieu of the SCA. Doc. 12 at 2. This Court noted in its earlier Opinion and Order that Thompson's ERISA claim is based on the terms of the SCA and not the LTRA. See Doc. 1; Doc. 32 at 3.

Relying on Sanzone v. Mercy Health, 954 F.3d 1031 (8th Cir. 2020), this Court denied Pioneer's motion to dismiss. Doc. 14. In Sanzone, the United States Court of Appeals for the Eighth Circuit concluded "whether a plan is an ERISA plan is an element of the plaintiff's case and not a jurisdictional inquiry." 954 F.3d at 1040. Accordingly, this Court noted that "[b]ecause the existence of an ERISA plan is not a jurisdictional prerequisite, federal subject-matter jurisdiction lies over Thompson's suit as long as he raises a colorable claim under ERISA." Doc. 14 at 10 (cleaned up and citation omitted). This Court concluded that Thompson raised a colorable ERISA-governed claim based on his allegations of entering into the SCA. Id. at 11.

Following Pioneer's Answer, Thompson moved for partial summary judgment. Doc. 19. Thompson's motion seeks a declaration on three discrete issues on claims presently within the supplemental jurisdiction of this Court: that "(1) Thompson's termination of the Employment Agreement was valid; (2) Thompson's termination of the Employment Agreement also terminated the non-compete clause; and (3) that the non-solicitation clause is unenforceable." Doc. 21 at 2. In response, Pioneer moved for leave to conduct Rule 56(d) discovery, Doc. 22, which this Court denied. Doc. 32. This Court held both that Pioneer had not made the requisite showing under Rule 56(d) and that Pioneer's motion was largely moot given this Court would withhold ruling on Thompson's motion until after Pioneer had an opportunity to depose Thompson, conduct discovery on the existence of the SCA, and, if justified, file a motion for summary judgment on Count 1. Id. at 14. Having had the opportunity to depose Thompson and conduct necessary discovery, Pioneer now moves for summary judgment, Doc. 33, and asserts that "[a]s neither Thompson nor Pioneer entered into any version of an SCA," this Court is without subject-matter jurisdiction, Doc. 34 at 1.

## II. Legal Standard

"[F]ederal courts are courts of limited jurisdiction." United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010). District courts have jurisdiction to hear "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Merely identifying a federal issue is not enough to confer federal jurisdiction; the right being enforced must arise from federal law. Cagle v. NHC Healthcare-Maryland Heights, LLC, 78 F.4th 1061, 1066 (8th Cir. 2023). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

A federal court "has a special obligation to consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). When a court lacks jurisdiction, the case must be dismissed. See Robins v. Ritchie, 631 F.3d 919, 924 (8th Cir. 2011); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Motions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts." Jessie v. Potter, 516 F.3d 709, 712 (8th Cir. 2008) (citing Osborn v. United States, 918 F.2d 724, 728–30 (8th Cir. 1990)). When deciding whether to dismiss on a motion for summary judgment for lack of subject-matter jurisdiction, this Court "may not resolve disputed fact issues." Id. (citing Fed. R. Civ. P. 56(c)).

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). When there are cross motions for summary judgment, each party's motion must be evaluated independently in accordance with the standard weight of evidence accorded to the nonmoving party to determine whether there is any genuine issue of material fact. See Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983); Fed. Ins. v. Great Am. Ins., 893 F.3d 1098, 1102 (8th Cir. 2018); Rodriguez v. VanIperen, 736 F. Supp. 3d 699, 711 (D.S.D. 2024).

### III. Discussion

This Court first considers Pioneer's argument about the absence of federal subject-matter jurisdiction over this case because if this Court lacks jurisdiction over the ERISA claim, it will not exercise supplemental jurisdiction to reach the state-law claims at issue in Thompson's Motion for Partial Summary Judgment. See Gibson v. Weber, 431 F.3d 339, 342 (8th Cir. 2005) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed."). Having reviewed the Statements of Undisputed Material Facts, Docs. 20, 35, 42, 45, this Court concludes that Pioneer is entitled to

summary judgment on Thompson's ERISA claim (Count 1) because the unexecuted draft SCA did not create an ERISA plan binding on the parties, and therefore, Thompson has not pleaded a viable claim arising under federal law.

ERISA is a federal law that "comprehensively regulates certain employee welfare benefits and pension plans." Bannister v. Sorenson, 103 F.3d 632, 635 (8th Cir. 1996). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "ERISA, therefore, preempts state common law causes of action that reference or pertain to an ERISA plan." Eide v. Grey Fox Tech. Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003). In addition to preempting state causes of action, ERISA creates a federal cause of action, authorizing "a participant or beneficiary [to] sue in federal court to recover benefits due under an employee benefit plan." Dakota, Minn. & E. R.R. Corp. v. Schieffer, 648 F.3d 935, 936–37 (8th Cir. 2011) (citing 29 U.S.C. § 1132(a)(1)(B)).

ERISA authorizes "a participant, beneficiary, or fiduciary . . . to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Section 1132(a)(1)(B) gives "a participant or beneficiary" a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1002(7) of Title 29 defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . , or whose beneficiaries may be eligible to receive any such benefit." To determine whether Thompson was a "participant" in an ERISA plan requires this Court to decide whether the SCA was an ERISA plan binding on the parties. And as the Eighth Circuit held in Sanzone, "whether a plan is an ERISA plan is an element of the plaintiff's case." 954 F.3d at

1040. "Section 1002(7) serves to identify those plaintiffs who may be entitled to relief, not to limit the authority of federal courts to adjudicate claims under ERISA." Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 978 (9th Cir. 2012).

It is now undisputed that the SCA was never executed. Doc. 42. ¶¶ 3, 6. Pioneer argues that it is entitled to judgment as a matter of law because "the record is undisputed that the LTRA—not governed by ERISA—as well as the 401(k) were ultimately agreed to by the parties in lieu of the more complicated SCA," and "Thompson cannot meet his burden of proving an essential element of his claim: that he participated in an ERISA-based plan that supported his allegations in his Complaint." Doc. 34 at 5–6. Therefore, Pioneer argues, "[g]iven that the SCA is the sole basis for Thompson's ability to litigate in federal court, even according to his own Complaint, no subject matter jurisdiction exists." Id. at 7.

In response, Thompson concedes that "Count I[1] of the Complaint predominately focuses on the Salary Continuation Agreement (SCA)" but counters that the count also "includes a broader claim of relief that is not limited to the SCA" in Paragraph 33. Doc. 41 at 8.[2] Thompson then abandons discussion of the SCA and instead reviews how "beginning in approximately 2019, he was also a party to a profit sharing and 401(k) plan through Pioneer," and that this profit sharing

---

[1] The Complaint uses Arabic numbers to refer to the counts. For example, Count 1 uses "1." In Plaintiff's briefing, Plaintiff uses Roman numerals to refer to the counts. This Court will dispense with using "sic" and quote from Plaintiff's briefing as it is.

[2] Paragraphs 28 through 33 of the Complaint make up Count 1, Thompson's ERISA claim, which alleges Pioneer breached the SCA, an ERISA-governed employee benefits plan, and seeks to recover benefits owed to Thompson, to enforce his rights under the terms of the SCA, and to clarify his rights to future benefits under the terms of the SCA. Doc. 1 ¶¶ 28–33. Following allegations concerning the SCA and Pioneer's breach, the final paragraph of Count 1, Paragraph 33, alleges, "Pioneer also interfered with Thompson's ERISA-governed rights in violation of 29 U.S.C. § 1140 (ERISA § 510), and Thompson seeks all benefits, rights, and clarifications of his rights as permitted by ERISA for Pioneer's unlawful interference." Id. ¶ 33.

plan is governed by ERISA. Doc. 41 at 9.[3] Relying on the language in Paragraph 33, Thompson argues that this Court should deny Pioneer's motion because "[w]hile Pioneer perhaps understandably focused on the SCA, the Complaint was not so limited, and Pioneer's representatives were certainly aware of the [profit sharing plan's] existence and that it was an ERISA governed plan to which Thompson was a plan participant." Id. Thompson then analyzes the other elements of his ERISA interference claim referencing the profit sharing plan instead of the SCA. See id. at 9–15.

In its reply, Pioneer argues both that Thompson has admitted that the SCA was never executed and the LTRA does not support jurisdiction and that Thompson's new effort to preserve an ERISA claim based on the profit sharing plan procedurally and substantively fails. Doc. 54 at 16 (arguing the profit sharing ERISA claim "cannot stand because [Thompson] failed to procedurally make the argument in his Complaint . . ., he failed to exhaust his administrative remedies, and he failed to substantively show that he has an interference claim under § 510"). Thompson filed a sur-reply arguing Pioneer waived the affirmative defense of failure to exhaust by not raising it in its Answer, Doc. 15. Doc. 57 at 1. Thompson also addressed Pioneer's failure to exhaust argument but not Pioneer's argument that Thompson failed to plead an ERISA claim based on the profit sharing plan as opposed to the SCA. See Doc. 57. With respect to Pioneer's

---

[3] Later in addressing Pioneer's Statute of Frauds argument, Thompson appears to abandon any notion that he is relying on the SCA for his ERISA claim:

> Finally, Pioneer contends the SCA is not enforceable due to South Dakota's version of the statute of frauds . . . . Whatever merit this contention *may have had* is not relevant, however, given that the [profit sharing plan] is fully executed and the parties have been performing under its terms. Thus, the Court need not resolve this issue.

Doc. 41 at 17 (emphasis added) (footnote and citation omitted).

9

pleading arguments, Thompson merely states, "Count I of the Complaint asserts a claim under ERISA and, among other things, alleges Pioneer interfered with Thompson's ERISA-governed rights in violation of 29 U.S.C. § 1140 (ERISA § 510). Thus, Thompson alleged Pioneer violated the substantive provisions of ERISA itself." Doc. 57 at 1.

Thompson's Complaint plainly pleads that the SCA is an ERISA-governed plan, that Pioneer breached the SCA, and that he has an ERISA remedy based on the SCA. Doc. 1 ¶¶ 29–32. This Court need not consider whether some ERISA claim might spring from elsewhere in Thompson's employment because Thompson's Complaint pleads no such claim. See Wendt v. Iowa, 971 F.3d 816, 820–21 (8th Cir. 2020) (holding that district court properly refused to consider a claim not pleaded in complaint but raised for the first time in response to a motion for summary judgment); N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004) (explaining that parties may not "manufacture claims, which where were not pled, late into the litigation for the purpose of avoiding summary judgment"). The Federal Rules of Civil Procedure only require plaintiffs to "give the defendant fair notice of what the claim is and the grounds upon which it rests." WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co., 897 F.3d 987, 992 (8th Cir. 2018) (cleaned up and citation omitted). But even under this permissive standard, Thompson's allegations about Pioneer's breach of the SCA—the only allegedly ERISA-governed plan mentioned in the Complaint—alongside a more general allegation that Pioneer "interfered with Thompson's ERISA-governed rights" did not provide fair notice that his ERISA claim against Pioneer was based on anything other than the SCA. Doc. 1 ¶¶ 29–33; WireCo, 897 F.3d at 993 (explaining that where the plaintiff was specific as to the grounds of the defendant's alleged breach of contract, the defendant "was not required to intuit additional theories of [contractual] liability that were not apparent from [the plaintiff's] complaint").

The structure of Thompson's Complaint further undercuts any argument that he was trying to plead an ERISA claim based on the profit sharing plan or anything other than the SCA. First, Thompson pleads that "[t]his civil action arises under the federal Employee's Retirement Income Security Act ("ERISA"), as *the benefit plan in question* is facially governed by ERISA according to the terms of the agreement." Doc. 1 ¶ 5 (emphasis added). The only benefit plan discussed in the Complaint is the SCA. See id. ¶ 10. Second, Thompson's focus on the SCA only and failure to include the profit sharing plan in Count 1 make clear that Thompson's ERISA claim is based on the terms of the SCA. Count 1 begins with a description of the SCA and continues to allege violations of Thompson's rights under ERISA in relation to the rights guaranteed by "his plan under the Salary Continuation Agreement." See Doc. 1 ¶¶ 28–33. Third, the Complaint not only is silent on the profit sharing plan, but also omits the profit sharing plan from the Complaint's exhibits. As noted above, Thompson asserts three counts in his Complaint that stem from disputes around three documents: the Employment Agreement, the Notice, and the SCA, which are the only exhibits attached to the Complaint. Docs. 1, 1-1, 1-2, 1-3.

Thompson has admitted that the SCA was never executed and that he had proposed a different agreement, the LTRA. See Doc. 36-2 at 6 ("Q: Okay. But there was no version of a salary continuation agreement that was executed; correct? A: Right."); id. at 7–8 ("Dylan just asked me to do some legwork on retirement benefits, and I provided him, you know, what I discovered."); Doc. 13-1; Doc. 42 ¶ 7 (undisputed Thompson sent an email discussing the LTRA as being "much simpler" than earlier plans discussed). At the time he filed the Complaint, Thompson was aware of the profit sharing plan because he was the one who had originally researched it prior to its adoption; he testified in his deposition that the profit sharing plan started in 2019, five years before the Complaint was filed. Doc. 36-2 at 4–5; Doc. 36-3 (containing

Thompson's research on profit sharing plans); Doc. 42 ¶ 11 (undisputed Doc. 36-3 was product of Thompson's research); Id. ¶ 26 (undisputed that "Thompson advocated for Pioneer to change its retirement benefits system in order to allow commissions-based employees to participate in Pioneer's profit-sharing plan"). Yet Thompson made no claim in the Complaint regarding the profit sharing plan.

Finally, Thompson did not mention the profit sharing plan during briefing on the motion to dismiss, let alone assert that his ERISA claim was based on it. See Doc. 6 at 7 ("Moreover, there are at least genuine triable issues as to whether the benefit plan described in the SCA is governed by ERISA due to the parties' conduct."); id. at 8 ("The Complaint shows that Thompson was presented with the written SCA and the parties performed under it or later employment documents incorporating the employee benefits."); id. at 11–12 ("In fact, this Court does have federal question subject matter jurisdiction, as the Complaint pleads that the employee benefit plan described in the SCA is governed by ERISA, which meets the necessary requirements to survive the motion to dismiss stage."); id. at 16 ("Thompson brings his ERISA claim through the benefit plan established in the SCA."). While Thompson referred vaguely in briefing on the motion to dismiss to other employee benefits governed by ERISA, Doc. 6 at 7, 18, he did not imply Pioneer withheld other employee benefits nor sought then or now to amend his Complaint to assert such claims.[4]

Because the SCA was never executed, it is not an ERISA-governed plan binding on the parties, and Thompson cannot bring an ERISA claim under 29 U.S.C. § 1132(a) based on the draft SCA. See Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 629 (8th Cir. 2001) (noting that

---

[4] Nor is there any indication that Thompson exhausted any claim under the profit sharing plan or that Pioneer waived or excused Thompson from doing so.

"the existence of a 'plan' is a prerequisite to the jurisdiction of ERISA"); Dakota, 711 F.3d at 880–81. As there is no claim arising under federal law, this Court does not have federal subject-matter jurisdiction, and Count 1 is dismissed without prejudice. See Hart, 630 F.3d at 1089; Robins, 631 F.3d at 924; Mo. Soybean Ass'n v. U.S. E.P.A., 289 F.3d 509, 513 (8th Cir. 2002). Because this Court has dismissed Thompson's ERISA claim—Thompson's only claim with original federal jurisdiction—this Court declines to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3); Mountain Home Flight Serv., Inc. v. Baxter Cnty., 758 F.3d 1038, 1045 (8th Cir. 2014). The parties are not from separate states, so this Court does not have diversity jurisdiction over the remaining two state-law claims. Therefore, Thompson's state-law claims are dismissed without prejudice. This Court accordingly does not reach the merits of and denies as moot Thompson's Motion for Partial Summary Judgment, Doc. 19, which only concerns his state-law claims.

### IV. Conclusion

For the foregoing reasons, it is

ORDERED that Thompson's Motion for Partial Summary Judgment, Doc. 19, is denied as moot in light of the absence of federal subject-matter jurisdiction. It is further

ORDERED that Pioneer's Motion for Summary Judgment, Doc. 33, is granted. It is further

ORDERED that the Complaint, Doc. 1, is dismissed without prejudice.

DATED this 31st day of December, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE