UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANDREW TAYLOR THOMPSON, <br><br> Plaintiff, <br><br> vs. <br><br> PIONEER BANK & TRUST, <br><br> Defendant. | 5:24-CV-05067-RAL <br><br><br> OPINION AND ORDER DENYING POST-DISMISSAL MOTIONS TO AMEND COMPLAINT AND AMEND OR ALTER JUDGMENT |

On December 31, 2025, this Court ruling on a summary judgment motion filed by Defendant Pioneer Bank & Trust dismissed the case without prejudice. Docs. 58, 59. Plaintiff Andrew Taylor Thompson filed a Motion to Alter or Amend Judgment, Doc. 64, and a Motion to Amend/Correct the Complaint, Doc. 68. Thompson also filed a complaint in Case No. 5:26-cv-05002-RAL (the 2026 case) against the same defendant, and Pioneer has filed a Motion to Dismiss the 2026 case. Doc. 6 in 5:26-cv-05002-RAL. This Court held a hearing on all pending motions on April 3, 2026. For the reasons explained below, Thompson's motions, Docs. 64 and 68, are denied.

## I.      Background

This marks the fourth time this Court has issued an Opinion and Order in this case. See Docs. 14, 32, 58. In short, Thompson and Pioneer in 2006 entered into the Pioneer Bank & Trust Registered Representative Employment Agreement (Employment Agreement) under which Pioneer employed Thompson as a financial advisor. Doc. 1 at 2; Doc. 1-1. Thompson worked for

1

Pioneer until August 2024 when Thompson alleges that he was compelled to resign. Doc. 1 at 2–3. Thompson informed Pioneer of his resignation by providing Pioneer with a Notice of Resignation of Employment and Termination of Employment Agreement (Notice of Resignation). Doc. 1 at 2–3; Doc. 1-3.

Following his departure from Pioneer, Thompson sued Pioneer in this case alleging three counts: (1) an Employee's Retirement Income Security Act (ERISA) claim alleging that a draft Salary Continuation Agreement (SCA) was an ERISA-governed employee benefits plan that Pioneer had breached; (2) a declaratory judgment claim seeking various declarations relating to the Employment Agreement and Thompson's resignation, including that Thompson was no longer bound by non-compete and non-solicitation provisions of his Employment Agreement; and (3) a claim of breach of the Employment Agreement. Doc. 1. Thompson attached three documents to his Complaint: the Employment Agreement, the unsigned SCA, and the Notice of Resignation. Docs. 1-1, 1-2, 1-3. In his 2024 Complaint, Thompson alleged this Court has jurisdiction under 28 U.S.C. § 1331 over Count 1 and supplemental jurisdiction under 28 U.S.C. § 1367 over Counts 2 and 3. Doc. 1 at 2. There is no diversity-of-citizenship jurisdiction here. See id. at 1.

Pioneer filed a motion to dismiss for lack of subject matter jurisdiction because Pioneer believed the ERISA claim failed to state a claim due to the SCA being unsigned, which this Court denied relying on Sanzone v. Mercy Health, 954 F.3d 1031, 1040 (8th Cir. 2020). Doc. 14. This Court believed that whether the SCA was a valid ERISA-governed plan or just a draft agreement would be "better addressed in a motion for summary judgment than one to dismiss." Doc. 14 at 12. This Court entered a scheduling order, Doc. 18, setting a May 30, 2025 deadline to amend the Complaint. No party amended their pleadings.

2

Thompson quickly filed a motion for partial summary judgment on his declaratory judgment claims. Doc. 19. This Court deferred ruling on that motion, though noted that Thompson's ERISA claim "hangs by a bit of a jurisdictional thread," and repeated that whether the SCA exists as an ERISA plan was something for summary judgment. Doc. 32 at 6. After discovery revealed that the SCA was never agreed to and Thompson knew it was only a proposal, Pioneer filed a motion for summary judgment again asserting, among other grounds, that this Court lacked subject matter jurisdiction. Doc. 33. In his response to Pioneer's motion for summary judgment, Thompson mentioned for the first time a different theory to support his ERISA claim. Thompson conceded that "Count I[1] of the Complaint predominately focuses on the Salary Continuation Agreement (SCA)" but urged that the count also "includes a broader claim of relief that is not limited to the SCA" in Paragraph 33. Doc. 41 at 8.[2] Thompson then abandoned discussion of the SCA and instead reviewed how "beginning in approximately 2019, he was also a party to a profit sharing and 401(k) plan through Pioneer," and that this profit sharing plan is

---

[1] The Complaint uses Arabic numbers to refer to the counts. For example, Count 1 uses "1." In Plaintiff's briefing, Plaintiff used Roman numerals to refer to the counts. This Court will dispense with using "sic" and quote from Plaintiff's briefing as it is.

[2] Paragraphs 28 through 33 of the Complaint make up Count 1, Thompson's ERISA claim, which alleges Pioneer breached the SCA, an ERISA-governed employee benefits plan, and seeks to recover benefits owed to Thompson, to enforce his rights under the terms of the SCA, and to clarify his rights to future benefits under the terms of the SCA. Doc. 1 ¶¶ 28–33. Following these allegations, the final paragraph of Count 1, Paragraph 33, alleges, "Pioneer also interfered with Thompson's ERISA-governed rights in violation of 29 U.S.C. § 1140 (ERISA § 510), and Thompson seeks all benefits, rights, and clarifications of his rights as permitted by ERISA for Pioneer's unlawful interference." Id. ¶ 33. The Complaint mentioned no other source of ERISA rights other than the SCA.

governed by ERISA. Doc. 41 at 9.[3]  Relying on the language in Paragraph 33, Thompson argued

that this Court should deny Pioneer's motion because "[w]hile Pioneer perhaps understandably

focused on the SCA, the Complaint was not so limited." Id. Thompson then analyzed the other

elements of his ERISA interference claim referencing the profit sharing plan instead of the SCA.

See id. at 9–15.

This Court granted Pioneer's Motion for Summary Judgment as to the ERISA claim based

on the SCA, Doc. 33, and denied Thompson's Motion for Partial Summary Judgment, Doc. 19.

Doc. 58 at 13. This Court read the Complaint, as it had previously, to assert an ERISA claim based

entirely on the SCA.  See Doc. 14 at 4 ("Thompson's Complaint contains three counts: 1) an

ERISA claim for recovery of benefits under and interference with his rights under the SCA . . . ."),

12; Doc. 32 at 3 ("Thompson's ERISA claim [] is based on the terms of the SCA and not the

LTRA."), 4, 6, 14 (noting "the viability of the ERISA claim based on a binding SCA is precarious,

leaving the basis for federal jurisdiction in doubt"); Doc. 58 at 3,7, 10–12. Thompson and Pioneer

never executed the SCA claimed to have been ERISA-governed, Thompson could not introduce a

new ERISA theory in a response brief given the absence of notice that the ERISA claim was based

on something other than the draft SCA, and therefore, federal subject matter jurisdiction was

---

[3] Later in addressing Pioneer's Statute of Frauds argument, Thompson's response brief appeared
to abandon any notion that he is relying on the SCA for his ERISA claim:

> Finally, Pioneer contends the SCA is not enforceable due to South Dakota's version
> of the statute of frauds. Whatever merit this contention *may have had* is not
> relevant, however, given that the [profit sharing plan] is fully executed and the
> parties have been performing under its terms. Thus, the Court need not resolve this
> issue.

Doc. 41 at 17 (emphasis added) (footnote and citation omitted).

lacking due to the failure of the ERISA claim. Doc. 58 at 12–13. This Court chose to dismiss the case without prejudice. Docs. 58, 59.

On January 12, 2026, Thompson filed a new lawsuit with the same three counts in the District of South Dakota, but this time, the ERISA count omitted reference to the draft SCA and relied primarily, but not exclusively, on the profit sharing plan (the Plan). Doc. 1 in 5:26-cv-05002-RAL. The ERISA count asserts in part, "Thompson seeks to recover benefits due to him under the Plan, to enforce his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan (or other ERISA-regulated plans or documents yet to be discovered), as contemplated by 29 U.S.C. § 1132(a)(1)(B) (ERISA § 502 (a)(1)(B))." Id. ¶ 30. The other two counts do not materially differ from the state law counts in the 2024 case complaint apart from adding a reference to a 2025 Eighth Circuit decision in paragraph 41(e). The exhibits attached are the same except that the Plan has replaced the SCA.

Thompson then filed a Motion to Alter or Amend Judgment, Doc. 64, and a Motion to Amend/Correct the Complaint, Doc. 68, in this case. Thompson argues in the Motion to Alter or Amend the Judgment under Federal Rule of Civil Procedure 59(e) that this Court had subject matter jurisdiction over the ERISA claim and in turn, the state-law claims, and that the Complaint gave Pioneer fair notice about Thompson's ERISA claim expanding beyond the SCA. Doc. 65. The Motion to Amend/Correct the Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and 28 U.S.C. § 1653 attaches a proposed amended complaint that still includes reference to the SCA, but adds the following language to paragraph 33 in the ERISA count: "Pioneer also interfered with Thompson's ERISA-governed rights in violation of 29 U.S.C. § 1140 (ERISA § 510), and Thompson seeks all benefits, rights, and clarifications of his rights as permitted by ERISA for Pioneer's unlawful interference, **whether under the SCA or any other document including the**

5

**Pioneer Bank & Trust Employees Profit Sharing Retirement Plan dated January 1, 2019,**

**attached as Exhibit 4 to the Declaration of Michael L. Snyder (Docket 43).**" Doc. 68-1 ¶ 33

(proposed amendment in bold). Pioneer filed a Motion to Dismiss the 2026 Complaint and argued

that the doctrine of res judicata bars Thompson's 2026 Complaint and this Court lacks subject

matter jurisdiction over the new ERISA claim and supplemental jurisdiction over the state law

claims. Docs. 6, 7 in 5:26-cv-05002-RAL. On April 3, 2026, this Court held a hearing on all

pending motions in both cases.

## II.    Discussion

### A. Motion to Amend Judgment

Thompson has filed a motion pursuant to Federal Rule of Civil Procedure 59(e) to "correct

manifest error of law and/or fact upon which the Judgment is based." Doc. 64 (citing Doc. 58).

Under Federal Rule of Civil Procedure 59(e), "[a] motion to alter or amend a judgment must be

filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Motions to alter

or amend a judgment "serve a limited function of correcting 'manifest errors of law or fact or to

present newly discovered evidence.'" Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of

the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998) (quoting Hagerman v. Yukon Energy Corp.,

839 F.2d 407, 414 (8th Cir. 1988)). A motion under Rule 59(e) "cannot be used to introduce new

evidence, tender new legal theories, or raise arguments which could have been offered or raised

prior to entry of judgment." United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th

Cir. 2006) (cleaned up and citation omitted). This Court has broad discretion in deciding whether

to grant or deny a motion to alter or amend its judgment under Rule 59(e). Metro. St. Louis Sewer

Dist., 440 F.3d at 933; see also Saylor v. Jeffreys, 131 F.4th 864, 868 (8th Cir. 2025)

("[Appellant's] rule 59(e) motion repeated arguments that the district court rejected in dismissing

6

his complaint. There is no ground for reversal."); Voss v. Hous. Auth. of the City of Magnolia, 917 F.3d 618, 626 n.6 (8th Cir. 2019) (concluding "the district court did not abuse its discretion in denying [appellant's] Rule 59(e) motion, which largely repeated the same arguments advanced at the summary judgment stage").

Thompson argues that the following mistakes were made in this Court's Opinion and Order, Doc. 58: (1) that this Court did not follow Sanzone in dismissing Thompson's Complaint for lack of subject matter jurisdiction as "the presence or absence of an ERISA plan is an *element of claim* rather than a *jurisdictional requirement*"; (2) this Court misapplied the well-pleaded complaint rule in reviewing the statements of undisputed material facts submitted by the parties; (3) this Court committed a manifest error of law in concluding that Thompson's Complaint had not provided Pioneer with fair notice that it may rely upon the Plan in its ERISA claim; and (4) this Court made certain factual findings without viewing the disputed facts in light most favorable to Thompson. Doc. 65 at 4, 6–14.

Taking these criticisms in turn, this Court cited to the Eighth Circuit's decision in Sanzone for the very principle that Thompson argues was overlooked—"whether a plan is an ERISA plan is an element of the plaintiff's case." Doc. 58 at 7 (citing Sanzone, 954 F.3d at 1040). This Court followed Sanzone previously in denying Pioneer's motion to dismiss. Doc. 14. Thompson in arguing that this Court failed to follow Sanzone highlights two pre-Sanzone cases this Court added in a "see" citation to illustrate language the Eighth Circuit had used when discussing the impact of an absence of an ERISA plan on an ERISA claim. Doc. 58 at 12–13. From this, Thompson argues that this Court failed to apply the current, binding precedent as set out in Sanzone.

This Court ultimately reasoned, "[b]ecause the SCA was never executed, it is not an ERISA-governed plan binding on the parties, and Thompson cannot bring an ERISA claim under

29 U.S.C. § 1132(a) based on the draft SCA." Id. at 12. Thompson does not argue otherwise and agreed at the hearing that partial summary judgment on the ERISA claim should enter to the extent the ERISA claim was based on the unexecuted SCA. Thompson had in fact pleaded an ERISA claim based on an unexecuted draft document that, as his deposition revealed, he knew was never executed. Because the SCA being an ERISA-governed plan was an element of the plaintiff's case, Thompson's ERISA claim failed, and Pioneer was entitled to summary judgment on the ERISA claim relying on the SCA. Sanzone, 954 F.3d at 1040; Fed. R. Civ. P. 56(a).

Perhaps this Court should have been clearer to grant summary judgment on the merits that the ERISA claim based on the SCA failed as a matter of law because a necessary element failed in that the SCA was not an ERISA plan or even an agreement between the parties at all. But that still results in dismissal of the state-law claims without prejudice and renders murkier whether res judicata bars Thompson from now alleging a different ERISA claim. This Court's intention in dismissing without prejudice was to avoid affecting what state litigation was pending and not to bar any legitimate claim Thompson might have against Pioneer under the Plan or other agreements. The claim that the SCA was an ERISA-governed plan or a contract at all was not viable. Regardless, this Court did not ignore or misapply Sanzone.

Thompson's remaining three criticisms of the prior ruling all relate to his belief that this Court read his Complaint too narrowly and it should have been deemed to plead a different unnamed source of ERISA rights in addition to the SCA and violation thereof. This Court reviewed extensively why the Complaint did not give fair notice to Pioneer that Thompson intended to rely on any other document other than the SCA in its Opinion. See Doc. 58 at 10–11. This conclusion is not based on what Thompson calls "a common but incorrect assumption" that Thompson was in possession of the Plan or otherwise knew of its ERISA-governing language.

8

Doc. 65 at 11.  Rather, this Court reviewed the allegations of the Complaint and, consistent with how it had viewed the claim throughout, read it to allege the SCA as the source of the ERISA rights Thompson pleaded to have been violated.  See Doc. 58 at 10–12.  Thompson's response to Pioneer's Motion for Summary Judgment was the first time Thompson raised a theory that he had an ERISA claim independent of the draft SCA.  That brief came well after the deadline set to amend the pleadings.  Thompson's theory in the response brief that the Plan provided ERISA rights that Pioneer violated differs from what Thompson's Complaint alleged.  This Court did not err in declining to consider the merits of that theory.  See Wendt v. Iowa, 971 F.3d 816, 820–21 (8th Cir. 2020) (holding that district court properly refused to consider a claim not pleaded in complaint but raised for the first time in response to a motion for summary judgment); N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004) (explaining that parties may not "manufacture claims, which where were not pled, late into the litigation for the purpose of avoiding summary judgment").  This Court chose to dismiss the ERISA count based on the SCA without prejudice, which would allow Thompson to re-file his complaint pleading an ERISA claim based on the Plan, and he has now done so.  See Doc. 1 in 5:26-cv-05002-RAL.[4]

---

[4] Any renewed ERISA claim specifically based on the unexecuted SCA would be barred.  But Thompson's ERISA claim was dismissed without prejudice in part because this Court is mindful of the Eighth Circuit's pre-Sanzone characterization of ERISA plaintiffs:

> No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.  Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information.  If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.  These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief.

This Court does not find its prior ruling to be a "manifest error[] of law or fact." See Innovative Home Health Care, 141 F.3d at 1286. This Court's reasoning is contained in its Opinion and Order, Doc. 58, and need not be fully recited anew. Plaintiff's remedy now lies with an appeal to the Eighth Circuit, which he has already filed following the entry of judgment in this case, or pursuing his different ERISA claims in the 2026 case. See Doc. 70.

### B. Motion to Amend Complaint

Thompson separately moves to amend his Complaint "to further clarify that Count I of the Complaint is not limited to the draft Salary Continuation Agreement (the 'SCA') and to cure jurisdictional defects that may appear in the pleading." Doc. 68. This Court had entered a Rule 16 Scheduling Order setting May 30, 2025, as the deadline to amend the pleadings. Doc. 18. A court has the discretion to deny motions to amend made after a deadline set in a scheduling order. See Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497–98 (8th Cir. 2008) (concluding district court did not abuse its discretion in denying first motion to amend complaint submitted five months after the date set by the court in its scheduling order for amendment of the pleadings or in denying the second motion to amend complaint "given the potential prejudice to defendants that would result from the late addition of a new claim proposed after most of the discovery had been completed").

Federal Rule of Civil Procedure 15(a)(2) allows a court to grant leave to amend and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[a]lthough a pretrial motion for leave to amend one's complaint is to be liberally granted, different considerations apply to motions filed after dismissal." Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1082 (8th Cir. 1993) (citation omitted). "[I]nterests of finality dictate that

---

Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009).

leave to amend should be less freely available after a final order has been entered." United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 823 (8th Cir. 2009).  It is "well-settled that district courts in this circuit have considerable discretion to deny a [timely] post judgment motion for leave to amend because such motions are disfavored, but may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits." United States v. Mask of Ka–Nefer–Nefer, 752 F.3d 737, 742–43 (8th Cir. 2014) (internal quotations omitted) (alteration in original).  Leave to amend after a judgment of dismissal "will be granted if it is consistent with the stringent standards governing the grant of Rule 59(e) and Rule 60(b) relief." Id. at 743 (citing Dorn v. State Bank of Stella, 767 F.2d 442, 443–44 (8th Cir. 1985)).

Here, as explained above, Thompson has not shown a manifest error of law or fact in this Court's decision that Thompson's ERISA claim based on the SCA failed and that supplemental jurisdiction over the remaining state-law claims should not then be exercised.  The interests of justice do not favor granting leave to amend, especially when Thompson is pursuing identical claims in Case No. 5:26-cv-05002-RAL as in the proposed amended complaint.  Therefore, granting the motion to amend would be inconsistent "with the stringent standards governing the grant of Rule 59(e) and Rule 60(b) relief." Id.

11

**III.    Conclusion**

For the foregoing reasons, it is

ORDERED that Thompson's Motion to Amend/Alter the Judgment, Doc. 64, is denied.  It

is further

ORDERED that Thompson's Motion to Amend the Complaint, Doc. 68, is denied.

DATED this 17th day of April, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

12